United States District Court
Eastern District of Michigan
Southern Division

Jebrie Cross,
　　　　Plaintiff,

V.　　　　　　　　　　　　　New Case.

The State of Michigan, et al.,
County of Wayne,
City of Detroit,
Michael M. Hathaway,
Kym Worthy,
Mary F. Rubio
Sgt. Paytra Williams,
Sgt. Guntzviller,
　　　　　　　Defendant(s),

Case: 2:26-cv-10207
Assigned To : White, Robert J.
Referral Judge: Altman, Kimberly G.
Assign. Date : 1/21/2026
Description: PRIS- CROSS V. STATE
OF MICHIGAN, ET AL (CS)

VERIFIED COMPLAINT
FOR DECLATORY AND
INJUNCTIVE RELIEF

I.　　UNLAWFUL IMPRISONMENT
OF A MENTALLY INCOMPETENT
PERSON

Complaint for civil rights violations now comes

1) Plaintiff, Jebrie Cross #533943, is a natural person currently imprisoned by the State of Michigan who has custody of the Plaintiff.

(1) of 6

## II. JURISDICTION

2.) This is a civil rights action by Plaintiff Jebrie Cross #533943, asserting 5th, 8th, 14th, U.S. Const. Amendment rights and Mich. const. 1963 art, 1 § 2 & 17 rights violations. This Court has jurisdiction under 28 U.S.C.A. 1331, 1343, and Mich. Const. 1963 art. 6, MCL 600.605, MCL 600.4301, inherent authority to remedy unconstitutional confinement.

3.) The Eastern District of Michigan is an appropriate venue under 28 U.S.C.A. 1391, because it is where the plaintiff domicile is pursuant to proceedings originating in this jurisdiction and the constitutional violations occurred here.

## III. STATEMENT OF FACTS

4.) At all times, Plaintiff suffered from significant Mental illness and cognitive impairments, all relevant times, affecting his ability to: Understand the nature of and object of the proceedings, Consult with counsel with a reasonable degree of rational understanding, Make knowing, voluntary, and intelligent waivers of constitutional rights.

5.) Despite clear indicia of incompetence, Plaintiff was:

6.) interrogated, charged, prosecuted, and tried and/ or sentenced without a "valid" judicial determination of competency, or while competency was in doubt.

7.) The trial court failed to conduct an adequate competency hearing when a bona fide doubt as to Plaintiff's competency existed, in violation of due process. Trial court, the state failed to admit Plaintiff's independant competency evaluation into evidence at trial.

8.) No lawful finding was made that Plaintiff was competent to: waive Miranda rights, assist counsel, stand trial, or be sentenced. see (evaluation attached)

9.) As a result, Plaintiff is currently imprisoned without lawful authority, because: a mentally incompetent person may not be tried or punished. Proceedings conducted while incompetent are void.

10.) Plaintiff has not received constitutionally required competency restoration treatment, nor has the state pursued civil commitment procedures as required by law. see (evaluation of Plaintiff's competency before trial attached)

## IV   CONSTITUTIONAL VIOLATIONS

Count #1  Violation of Michigan Constitution 1963, Article 1, §17 (Due Process / Cruel and unusual punishment) U.S. Const. 8th Amendment & 14th Amendment

(3) of 6

www.PrintablePaper.net

11.) Article 1, §17 guarantees that no person shall be deprived of liberty without due process of law and prohibits cruel or unusual punishment, 8th & 14th U.S. Const. Amendments.

12.) The imprisonment of a mentally incompetent person constitutes: arbitrary detention, fundamental unfairness, cruel and unusual punishment. U.S. Const. 8th Amendment

13.) Plaintiff's continued incarceration under these circumstances violates Article 1, §17 and is structurally unconstitutional, The 5th & 14th Amend. U.S. Const.

Count #2 Violation of Michigan Constitution 1963, Article 1, §2 (Equal Protection) U.S. Const. 14 Amendment.

14.) Article 1, §2 and 14 Amendment guarantees equal protection of the laws.

15.) Plaintiff has been treated differently than similarly situated defendants who: receive competency evaluations, are diverted to treatment, and are protected from prosecution while incompetent.

16.) The States failure to afford Plaintiff these protections lacks a rational basis and violates equal protection.

Count #3 Violation of the 5th Amendment to the United States Constitution (Due Process-As Applied to the States)

(4) of 6

www.PrintablePaper.net

17.) The 5th Amendment prohibits deprivation of liberty without due process of law.

18.) Due process forbids: trial of an incompetent defendant, punishment of a person incapable of understanding the proceedings, continued imprisonment without competency restoration or lawful civil commitment.

19.) Plaintiff imprisonment violates the 5th Amendment as incorporated against the States through the 14th Amendment.

## V.                    STRUCTURAL ERROR

20.) The trial, conviction, and imprisonment of a mentally incompetent person constitute structural error.

21.) Structural error: requires no showing of prejudice, renders the proceedings void, and requires vacatur or immediate relief.

## VI                RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare that Plaintiff's imprisonment violates: Mich. Const. 1963, Article 1, § 2 and 17, & the 5th and 14th Amendments to the U.S. Const. and grant injunctive relief in this matter.

B. Order immediate release, or in the alternative:

C. Order that the trial court vacate convictions, grant Plaintiff's Motion for relief from judgement now pending in the trial court, which was obtained while Plaintiff was mentally incompetent and promptly retry the Plaintiff in a new trial. Case #16-000209-01-FC

D. Grant any other relief this court deems just and proper. Injunctive relief is proper for reliance interest.

Respectfully,

Plaintiff Demand Trial By Jury

VERIFIED COMPLAINT

I Jehvie Cross, declare under the penalty of perjury that the allegations in this verified complaint are true and correct.

Date: 1/14/2026 /s/ Jeffrey Cross

Jehvie Cross, Affiant

28 U.S.C.A. 1746

United States District
Eastern District of Michigan

Southern Division


Jebrie Cross,
          Plaintiff,

V.                                         New Case.

The State of Michigan, et al.,
County of Wayne,
City of Detroit,
Michael M. Hathaway,
Kym Worthy,
Mary F. Rubio
Sgt. Paytra Williams,
Sgt. Guntzviller.
          Defendant(s),


## Certificate of Service

Pursuant to 28 U.S.C. §1746, I Plaintiff Jebrie Cross, duly declare under the penalty of perjury, that the foregoing statements below are true and correct, that I served documents: Verified Complaint for Declatory and Injunctive relief and Affidavits attached to all parties and filed with my consent 28 U.S.C. §1746


Respectfully,

Date: 1/14/2026                    /s/ Jebrie Cross

                                   Jebrie Cross
                                   #533943 In Pro Se
                                   Macomb Correctional
                                   34625 26 mile Rd.
                                   Lenox Twp, MI 48048

# Leslie Ann Kaye, Ph.D.
## Licensed Psychologist
1030 Harrington St., Ste. 302A, Mount Clemens, MI 48043
drleslie@lesliekaye.com
313 978-7792

French, Limited Spanish, and English Language

## EDUCATION
**Ph.D., APA Approved Counseling Psychology Program,**
**University of Southern California, 2003**

**Clinical Fellow, Massachusetts General Hospital, Harvard University, Boston, 2000-2002**

**Harvard Medical School, Graduate, Center for Psychoanalytic Studies, 2000-2002**
**Boston University, Department of Counseling Psychology and Religion, 2000-2001**

**APA Approved Clinical Internship,**
**Montreal General Hospital, McGill University, Montreal, 1998-1999**

**McGill University, Research in Human Sexuality and Its Problems, 1999**

**USC Presidential Fellow, The Leadership Institute,**
**"Highest honor given at USC", 1995-1996**

Dissertation:  Post Traumatic Stress Disorder with Psychotic Features
Harvard Project on Women's Psychology,
Boys Development and the Culture of Manhood, 1996
Harvard University, Negotiation and Conflict Resolution, Fall 1996
Charles University, Prague, Czech Republic, Poetics of Leadership, Summer 1995

**M.A., Counseling Psychology, Pacifica Graduate Institute, Santa Barbara, California, 1994**
Greek Mainland and Islands, Myth and Literature, Summer 1993
Stanford University, Jung and Analytic Psychology, Spring 1993
University of Hawaii, Hilo, Cultural Healing Rites, Group Processes, 1992
Master's Thesis: Fantasywork:  Applying Dream Analysis, Active Imagination, and Literary Theory to
Sexual Fantasy

**B.A., Cum Laude, Humanities: Business/French/Theatre, Michigan State University, 1985**
Universite de Paris, Sorbonne, Cours de Civilization, Summer 1984
College International de Cannes, French Language, Business French, Spring 1984

 Leslie Kaye, Ph.D. and Associates
1030 Harrington St., STE. 302A, Mount Clemens, MI 48043
313-978-7792

August 28, 2016

The Honorable Michael M. Hathaway
Wayne County 3rd Circuit Court
1441 St. Antoine
Detroit, MI 48226

RE: CROSS, Jebrie
CFP#: 1002448
Docket#: 16-000209-01-FC
Subject: Forensic Testing

Dear Judge Hathaway:

Your Honor, I have been retained to conduct a forensic evaluation of Jebrie Cross, a 28 year old African American man who was born on July 28, 1987. Charged with two counts of Homicide – Felony Murder and Burning Dwelling House under docket number 16-000209-01-FC in the 3rd Circuit Court of Wayne County, Mr. Cross was referred for evaluation and I was retained by his sister, Ms. Jackie Murphy.

## SOURCES OF INFORMATION/EVALUATION PROCEDURES

1) On August 21, 2016, I reviewed the materials that accompanied Mr. Cross's referral from Ms. Jackie Murphy that included two previous psychological evaluations: one a document regarding Criminal Responsibility dated July 14, 2016, and one a document on Competency to Waive Miranda Rights dated July 15, 2016.
2) On Saturday August 27, 2016, I reviewed the Detroit Fire Department Fire Investigation Synopsis, and the transcribed Preliminary Investigation Documents – Volume I and II dated Tuesday January 5, 2016.
3) On Saturday August 27, 2016, I met with defense counsel.
4) On Saturday August 27, 2016, I reviewed the DVD of Mr. Cross's Waiving of Miranda Rights and his interrogation.
5) At approximately 4:30 pm August 28, 2016, I attempted begin my forensic interview with Jebrie Cross. At that time, the attendant at 525 Clinton Street informed me that due to staff shortages at the jail, no professional visits would be allowed at that time. At approximately 4:35 pm, I returned and asked the attendant if he could honor your "Order and Certification of Jail Visit" with my name misspelled as "Leslie Tate, Psychologist." He stated we should re-approach Your Honor for name correction on said order.
6) With the name correction your "Order and Certification of Jail Visit" at approximately 4:30 pm August 31, 2016, I attempted again to begin my forensic interview with Jebrie Cross. At that time, the attendant at 525 Clinton Street informed me that due to no stamp from the Wayne County Clerk, and finding your signature illegible, I would not be allowed to interview Mr. Cross at that time.

AFFECT: Mr. Cross appeared alternatively anxious, sad, and inappropriately laughing or smiling behind a raised hand over his mouth, incongruent with the subject matter or seriousness of the exam.

THOUGHT PROCCESSES: There appeared to be a poverty of content, and staccato flow of responses, and form was often lacking logical coherence. When I inquired what Mr. Cross was thinking about, he reported he liked to draw, that he often "had headaches after the accident," then asked to borrow my pen and drew a face. When I inquired what he was doing, he said he was "drawing a doctor." He then returned my pen.

THOUGHT CONTENT: Mr. Cross reported the delusion that people are stealing his thoughts and ideas. He reported "feeling guilty that I was driving" when he and his wife and two others got in a car accident. He reported his wife was "tired" and that is why he was driving at that time. He reported his wife was pregnant at that time.

PERCEPTIONS: At one point Mr. Cross looked startled and when I inquired what was wrong, he reported he thought he saw "a rat." He reported hearing voices "whispering things" as long as he can remember. He denied these voices telling him to hurt himself or others.

SUICIDALITY/HOMICIDALITY: Mr. reported a suicide attempt in his jail cell where he "tied sheets" a couple months ago. He reported that another inmate found him doing so and stopped him. He denied homicidal ideation.

INSIGHT/JUDGEMENT: Mr. Cross' insight was poor as to his current plight. He laughed and smiled inappropriately, drew pictures and talked about enjoying drawing, and in the end wanted to tell me a long winded joke about a ticket to heaven, that involved tearing paper that then made the sign of the cross and one character going to hell, and the other going to heaven. When I inquired if he knew that it was wrong to kill people he said "Yes," and when I inquired if he knew that it was wrong to set a house on fire, he replied "Yes."

When asked to repeat 3 Digits 12, 24, 62, he reported 12, 16, 42, getting one number correct. After 5 minutes, he reported 25,46, 6, getting no numbers correct.

When asked to spell "world" backwards, he responded incorrectly with "w,d" and then said "I don't know."

When asked to subtract 7s from 100, he responded incorrectly with "89."

When asked to subtract 3s from 20, he responded correctly with "17" then incorrectly with "15."

When asked to add 15+12+7, he responded incorrectly with "36."

When asked to multiply 25x6, he asked for a pen and paper and made six groups of what he thought were 25, and slowly added them up, responding incorrectly "325."

When asked if an item cost $.78 and he gave the clerk $1.00, what change would he get back, he responded incorrectly with "$.25."

When asked what medications he was on he responded "Remeron, I don't know why, Seraquel, to sleep,

Center for Human Communication, Los Gatos, California
Community mental health center experience in individual, group and couples counseling
for court ordered offenders, trauma victims, and community members. 1992 to 1993.

Self Management Systems, Los Gatos, California
Consulting firm experience in psychological corporate seminars, manager-employee
dispute resolution, stress management, peak performance strategies and executive
communication involving extensive business development and presentations. 1992 to 1993.

Teen Enrichment Center, Milpitas, California
Group home experience in counseling troubled, abused and emotionally disturbed girls age
13-17. 1992.

Ford Motor Company, Detroit, Los Angeles, New York
Limited contract assignments as writer/associate producer for monthly corporate video,
daily news, special satellite teleconferences and one of eight national spokesmodels for new
product introductions. Radio, TV, Film Department/Employee Communications and
Special Promotions. 1985, 1988 to 1991.

Public/Government Relations, Theatrical and Special Event Production. 1982 to 1991.


HONORS AND ASSOCIATIONS

Board of Directors, Global Ties Detroit

Art Therapist, Global Village Ministries, Masai Girls, Olmalaika Home, Kenya

Pastoral Counselor, Celebration Community Beach Church, Naples, Florida

Past President, Board of Directors, International Institute of Metropolitan Detroit

Board Member, Michigan Osteopathic Association Advocates, Three Year Term

Certificate of Appreciation, Los Angeles City Attorney's Office
    For leading dialogues in the community on race relations and sexual harassment

Presidential Fellow, The Leadership Institute, University of Southern California (USC)

Writing Scholarship, Master of Professional Writing USC, at Charles University, Czech Republic

Assistant Poetry Editor, Southern California Anthology/College International de Cannes Award

aggravated murder. In addition, he was sentenced to 10 to 25 years in prison for aggravated burglary and aggravated arson and 2 years in prison for theft and receiving stolen property, to be served consecutively.

On direct appeal, the Ohio Court of Appeals affirmed Mr. Garner's convictions and sentence, as did the Ohio Supreme Court. The United States Supreme Court denied *certiorari*. He twice filed petitions for postconviction relief. Both times, the state trial court denied the petitions, the Ohio Court of Appeals affirmed, and the Ohio Supreme Court declined to hear either of the cases.

In 1998, Mr. Garner filed a petition for a writ of *habeas corpus* in the federal district court raising 23 grounds for relief. The district court denied all of the claims and dismissed the petition. He raised four issues on appeal to the Sixth Circuit Court of Appeals, arguing that the federal district court erred in denying him *habeas* relief because: (1) he did not knowingly and intelligently waive his *Miranda* rights before speaking with police; (2) his state trial counsel was ineffective for failing to investigate and argue his *Miranda* claim; (3) the state trial court erred by not providing him with experts to assist with his *Miranda* claim; and (4) the process by which the jury list was selected discriminated against African Americans.

## Ruling

The Sixth Circuit concluded that Mr. Garner did not knowingly and intelligently waive his *Miranda* rights before speaking with police, and thus, admission of his statement at trial was unconstitutional. Because the court granted *habeas* relief on his *Miranda* claim, the other three claims were not addressed.

## Reasoning

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the U.S. Supreme Court concluded that during custodial interrogation, a suspect is entitled to the Fifth Amendment right against self-incrimination and the right to have counsel present during such interrogation. The Court held that before questioning, a suspect must be informed of these rights. It went on to note that a suspect may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently."

Mr. Garner argued that he had waived his *Miranda* rights unknowingly and unintelligently. He did not contend that he had waived his rights involuntarily, and the Sixth Circuit referred to *Colorado v. Connelly*, 479 U.S. 157 (1986), among other cases, in pointing out that an involuntary confession is not necessarily also made unknowingly or unintelligently. Further, in clarifying aspects of a knowing and intelligent waiver, the court pointed to *Moran v. Burbine*, 475 U.S. 412 (1986), in which the Supreme Court defined "the requisite level of comprehension" to waive *Miranda* rights as "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" (*Moran*, p 421). To determine whether a suspect has knowingly and intelligently waived *Miranda* rights, a court must appraise the "totality of the circumstances" including the suspect's "age, experience, education, background and intelligence" and "whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights" (*Fare v. Michael C.*, 442 U.S. 707 (1979), p 725).



## OTHER SUBSTANCES

Mr. Cross reported that he uses marijuana, "the white stuff" cocaine, and that he uses" heroin rolled inside with the weed."

FAMILY LIFE: Mr. Cross reported the names of his 8 brothers and 5 sisters, stating he still sees Alice, who brings him food and cleans. He reported he lives with "his girl Jackie, who is like a wife or girlfriend, and Jebria", their daughter.

He reported a "good" relationship with both his mother and father, though his father "sometimes gave me a whooping". He reported his father also "sometimes talked to himself." He reported he fell down from a tree and has had seizures and shaking since he was a kid. He said he saw a doctor for this but that he got mad at the doctor's office, that they had to hold him down, and then they all played games".

## COMPETENCY TO WAIVE MIRANDA RIGHTS
Case Law:
In Garner v. Mitchell, 502 F3d 394 (6th Cir. 2007), the U.S. Court of Appeals for the 6th Circuit reversed an inmate's conviction and death sentence after concluding that the inmate did not knowingly and intelligently waive his Miranda rights. In both this case at the case of Jebrie Cross, the "requisite level of comprehension" to waive these rights is stated as "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." In appraising the "totality of the circumstances" it included the suspect's age, experience, background, and intelligence.



Opinion:
The previous psychologist's review of school records put him reading at a 1st grade level with a math ability of 3rd grade level. In reviewing the cd of his arrest, the officer tells him that the interrogators are now his best friends and that it is in his interest to tell them everything. They suggest he might write an apology. In my experience Mr. Cross is a man of below average intelligence who is extremely intimidated by authority figures, nervous around them and me, and is not of the level of intelligent comprehension to waive his right to remain silent or his right to counsel. Mr. Cross states that he is cold, and the officer tells him that he will get used to it, though it is December and the officers put on coats, and Mr. Cross is observed as having just a t shirt on into which he puts his arms. In my experience with Mr. Cross, he did not possess the mental level of comprehension to know the consequences of abandoning his rights as evidenced by his belief that he will be able to return home after giving his statement. Based on these observations, deficits in intelligence, potential head injuries from accidents, and my Mental Status Examination, I do not feel Mr. Cross was competent to waive his Miranda Rights.

Respectfully submitted,

Leslie Kaye, Ph.D.
Licensed Psychologist
Michigan 6301012459
Florida PY8645
Consulting Forensic Examiner

cc.     Mary F. Rubio Assistant Prosecuting Attorney
        Wright W. Blake, Defense Attorney
        Court Administration

<u>AFFIDAVIT OF JEBRIE CROSS</u>

I JEBRIE CROSS

PRISONER #533943                    Case No.16-000209-01-FC

Solemnly declare upon penalty of perjury and affirmation that
the facts as alleged herein are true, correct, accurate, and
reliable to the very best of my personal knowledge and
understanding.

1.) Legal Maxim: "A claim bought in law that is not contested

or rebutted, then stands as true. Hence silence to a controversy

is considered consent to any judgement". Non-rebutted Affidavits

are Prima Facie Evidence in the case. "Indeed, no more than

(Affidavits) is necessary to make the Prima Facie Case". U.S.

v. Kis, (7thCir. 1981) Cert Denied, 50 U.S. LW. 2169; S. Ct.

March 22, 1982.

2.) In Dickerson v. United States, the Supreme Court provided

a historical overview of the law regarding coerced confessions.

"Over time, our cases recognized two constitutional bases for

the requirement that a confession be voluntary to be admitted

into evidence: The 5th Amendment right against self-incrimination

and the Due Process Clause of the 14th Amendment".

The confession given to police in this case was unconstitutional

because my competency evaluation by Leslie Ann Kaye, Ph.D

licensed Psycologist revealed that I was not competent to waive

my miranda rights at that Interrogation. This was a clear

violation of my 5th and 14th Amendment constitutional rights

to Due Process and is why this conviction should be vacated.

3.) In Garner v. Mitchell, 502 F.3d 394 (6thCir.2007), the U.S.

Court of Appeals for the 6th Circuit reversed an inmates

conviction and death sentence after concluding that the inmate

did not knowingly and intelligently waive his Miranda rights.
Leslie Kaye, Ph.D. in her evaluation clearly stated that in her
opinion: The previous psycologist's review of school records
put me reading at a 1st grade level with a math ability of 3rd
grade level. In reviewing the CD of my arrest, the officer tells
me that the interrogators are now my best friends and that it
is in my best interest to tell them everything. They suggested
I might write an apology. Leslie Kaye then went on and stated:
In my experience, Mr. Cross is a man of below average intelligence
who is extremely intimidated by authority figures, nervous around
them and me, and is not of the level of intelligent comprehension
to waive his right to remain silent or his right to counsel.
Mr. Cross states that he is cold, and the officer tells him that
he will get used to it, though it is December and the officers
put on coats, and Mr. Cross is observed as having just a shirt
on into which he put his arms. In my experience with Mr. Cross,
he did not process the mental level of comprehension to know
the consequences of abandoning his rights as evidenced by his
belief that he will be able to return home after giving his
statement. Based on these observations, deficits in intelligence,
potential head injuries from accidents, and my Mental Status
Examination, I do not feel Mr.Cross was competent to waive his
Miranda Rights.
If the trial court would have allowed the evaluation of Leslie
Kaye to be admitted before the jury at trial, the outcome would've
been different finding Mr.Cross Not Guilty and the admission
of Leslie Kaye's evaluation would've changed the trial courts
rulings regarding my motion to suppress and my competency to
waive my Miranda Rights and stand trial. For this reason, this
case must be vacated and this court should take judicial notice.

4.) Because the defense at trial was unlikely to obtain funding for an independent evaluation at the states expenses, I contacted counsel by phone and letters in the mail several times during the weeks approaching trial in 2016, to timely inform Attorney Blake of my family obtaining an independent evaluation.

5.) Around September of 2016 my sister Alice Coleman filed a grievance on Wright Blake with the Attorney Grievance Commission.

6.) According to Licensed Psycologist Leslie Ann Kaye, Ph.D., I JEBRIE CROSS was not competent to waive my Miranda Rights in this case.

7.) Jackie Murphy hired Leslie Kaye to perform an independent competency evaluation in this case around before August 21, 2016.

8.) I JEBRIE CROSS attest that around the time before Jackie Murphy hired Leslie Kaye Ph.D. to do the competency evaluation, I did inform Attorney Wright Blake that my family will be looking for a Psycologist to do a competency evaluation.

9.) My ability to waive my Miranda Rights  knowingly and intelligently resulted in an unconstitutional use of my statements of confession at trial in violation of Due Process under the 5th,14th Amendments to the U.S. Constitution, and the Mich. Const. 1963 art 1, §17 & §20. This Honorable Court can agree that after taking judicial notice, this conviction must be vacated on constitutional grounds.

10.) The 13th Amendment to the U.S. Constitution 1865 §1 clearly states: Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
I was detained in the Wayne County Jail Before trial which was

punishment that I suffered without being duly convicted of a
crime in violation of the 5th, 13th, 14th Amendments to the U.S.
Constitution, and the Mich. Const. 1963 art 1, §17 & §20.

11.) The 8th Amendment to the U.S. Constitution clearly states:
Excessive bail shall not be required, nor excesive fines imposed,
nor cruel and unusual punishments inflicted.
Due to the fact that I am wrongfully convicted, it was cruel
and unusual punishment when I was detained in the Wayne County
Jail in around 2015 and 2016 without being duly convicted of
a crime. It is cruel and unusual punishment for me to be detained
all these years after being wrongfully convicted from 2015 to
now in violation of the 5th, 8th, 14th Amendments to the U.S.
Constitution and Mich. Const. 1963 art 1, §17. This is an
oppurtunity to cure these violations of rights and the only remedy
is to vacate all these convictions and my immediate release.

12.) It was a structural error for the trial court to allow this
case to trid in light of the fact thatthere were clear issues
regarding evaluations. On May 16, 2016 Judge Michael Hathaway
signed an order authorizing that I undergo an examination by
the Center for Forensic Psyciatry/Psycology to determine
"competency to waive Miranda Rights and stand trial". After the
evaluation by Margo Gilbert which was adopted by the trial court
at a competency hearing on July 19, 2016.
At the hearing on July 19, 2016, trial counsel Wright Blake stated
on the record: "Your Honor, we'll stipulate to the findings of
that report. Although that do not preclude us from getting an
independent evaluation".(CH 7-19-2016 p.4) Judge Hathaway respond-
ed "I wish that had been done...already, but your right, it do
not. I don't know how quickly you can do that". Mr.Blake responded

"If we had all the reports in a timely manner...we have been sandbagged on getting these evalautions for months, I would've been prepared to have done that I would've had one in place by this...I still don't have all of them".(CH 7-19-2016 p.5). Judge Hathaway agreed: "We don't have the competency to waive Miranda yet, which irritates me..They're [presumbly this refers to the forensic center] dropping the ball on virtually everything we send lately..I don't know what to say about it...I assume it"ll come before the August 30th trial date..it's six weeks away"(CH 7-19-2016 p.5) Judge Hathaway then continued: "I don't Know why there's a delay here. But, anyway, I'm not gonna let that stand in the way of our proceeding to trial on the 30th". A brief argument ensued over possible dates and scheduling conflicts which might impede progress in this case, and when Mr.Blake complained about the prosecutor, Mary Rubio, making inappropriate "comments" when this case was "serious", Judge Hathaway told the defense counsel Blake that he was the one at fault, and told Mr.Blake to "shut up".(CH 7-19-2016 p.11)

Leslie Kaye's evaluation was filed on August 28, 2016. The evidentiary hearing was held without the benefit of my expert Dr.Leslie Kaye Ph.D. It is clear that somehow the trial court abused it's discretion by allowing the trial to proceed when the issues regarding the competency evaluations were not resolved which was outcome determinative. Dr.Leslie Kaye's evaluation was clear that I was not competent to waive my Miranda Ri Rights rendering my statements of confession unconstitutional.

This Honorable Court should vacate this conviction for the same reason the Ninth Circuit Court of Appeals affirmed the granting of the writ of Habeas Corpus and ordered the state of California to to either release Garcia or hold a new trial in Garcia v. Long.

13.) In this case here, I  was arrested at his home as the warrant
was not signed nor is there a notary seal. The warrant shows
that no command was authorized by THE PEOPLE OF THE STATE OF
MICHIGAN to arrest Me then . This Due Process violation is pro-
hibited by the STATE and FEDERAL CONSTITUTIONS. This court is not
a supporter of those who violate the CONSTITUTIONAL RIGHTS of those
who find themselves being tried in this court. The only remedy
is to vacate convictions and release me now   from custody.

I affirmatively attest that the aforementioned statements,
information, facts are truthful, honest, and correct to the best
of my ability, knowledge, belief and understanding.

I further saith not.

Date: 11-17-25

JEBRIE CROSS AFFIANT

28 U.S.C. §1746

Respectfully,

/s/ _Jebrie Cross_

JEBRIE CROSS

#533943

Macomb Correctional

34625 26 Mile Rd.

Lenox Twp, MI 48048

_Kelly B. Edwards_

KELLY B EDWARDS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF SANILAC
My Commission Expires September 09, 2029
Acting in the County of Macomb

11-17-2025

6 of 6

# AFFIDAVIT of JEBRIE CROSS

I JEBRIE CROSS
PRISONER #533943 Case No. 16-000209-01

Solemly declare upon penalty of Perjury and affirmation that the facts as alleged herein are true, correct, accurate, and reliable to the very best of My personal Knowledge and understanding.

1) The trial court abuse it's discretion and Violating My right to due process under Article 1 § 17 of the mich. Const. 1963, and the Fifth and the Fourteenth Amendmen of the united States constitution, When it instructed the Jury on felony murder.

2) Prosecutor Commit misconduct in violating of My right to due process under Article 1, § 17 of the mich. Const. 1963, and the Fifth and Fourteenth Amendments of united States Constitution, When She charged Me with Felony murder While Knowing Prior that

Elements did not exist.

3.) The trial Court abused its discretion by allowing <u>People v. Green</u> to be entered into record and guide the Proceedin And the Judge did Not Reject but Stating there Could be a sentence for Each Referring to "FIRST degRee Premeditated murder and Felony murder Which I then was never Convicted of any Kind of murder And further the Judge Stating He would go READ the case and so baseing His Reason for his Conclusions also Stated "Quote" THE COURT and then from Now on I won't do it this Way if that's what -- Ms. Rubio: If it's CORRECT. THE COURT -- I'm NOT SUPPOSE to do. Ms. RoBio: Okay. THE COURT: IN-PART: All Right. So we don't have G.B.tt guidelines Pg. 8 this ERROR was Plain ERROR and it affected My Substantial rights. This was Prejudice and it affected the outcome of the lower Court Proceedings. This Court MUST exercise its discretion in vacate this conviction;

I affirmatively attest that the aforemntioned Statements, information, facts are truthful, honest, and correct to the best of my ability, Knowledge, belief and understanding

I further saith Not.

Date: 11-19-25

JEBRIE CROSS AFFIANT
28 U.S.C § 1746

Respectfully,

/s/ _Jebrie Cross_

JEBRIE CROSS
# 533943

Macomb Correctional
34625 26 Mile Rd.
Lenox TWP, MI, 48098

KELLY B EDWARDS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF SANILAC
My Commission Expires September 09, 2029
Acting in the County of Macomb

Kelly B. Edwards     11-19-2025

US POSTAGE

Jebrie Cross
# 533943
Macomb Correctional
34625 26 mile Rd.
Lenox Twp, MI 48048

United States District Court
For the Eastern District of Michigan
Office of the Clerk

Theodore Levin United States courthouse
231 West Lafayette Blvd.
Detroit, MI 48226

RECEIVED
JAN 21 2026
CLERK'S OFFICE
U.S. DISTRICT COURT